The deft., Rudolph, made cognizance as bailiff for Susanna Stilley, who avows the taking as a distress for rent in arrear. Pleas — First, a release; second, rien in arrear. Replication to the plea of release, non est factum and issue. Issue also on the other plea.
Gilpin, for plff. Thomas Cartmell died in 1804, and by his last will and testament he bequeathed an annuity of $40 per annum to his wife, Susanna Cartmell, (now Susanna Stilley, the deft.) which he charged on lands devised to his four sons. One of the sons, William, afterwards conveyed the land so devised to him, and charged as aforesaid with the said annuity or rent charge, to Empson Bird, and in 1818 Susanna Stilley executed to Bird a paper writing, releasing to him one fourth part of the said annuity charged as afs'd. on the lands so conveyed to him. From Empson Bird this land passed to the plff. in replevin. Release offered in evidence, and objected to as not being under seal.
Bayard. This is no release; it is not a deed at all; and if it were, it is made by a married woman.
Wales. The annuity does not arise by deed, and it is not necessary that the discharge should be by deed. As to the coverture, there is no evidence of it, and none could be admitted on the issue of non est factum. If relied on, it should have been pleaded specially.
The court. The question is not whether this annuity or rent charge could be discharged without deed; but it is whether the paper offered is the deed of the party. The plea sets up a release; the replication denies that it is the deed of the party, and the rejoinder affirms that it is her deed. This is the issue, and it is not supported by the paper offered. There is, however, another issue on the plea of rien in arrear to which the paper offered in evidence applies, and under which it is admissible.
Plff. gave in evidence a paper dated in 1818, releasing all demands on Empson Bird, or on his part of. the land devised by Thomas Cartmell for the payment of any part of the said annuity of $40. Also, a release under seal, dated April 10th, 1833, from Susanna Stilley to William M'Sordley, who held by conveyance from Bird a part of the land devised to Mr. Cartmell, charged as aforesaid.
Plff. then offered in evidence the deed of Thomas Cartmell, Jr. *Page 340 
and Susanna Stilley to Henry Guest, conveying one-fourth of the land devised by Thomas Cartmell, to wit: the share of Thomas Cartmell, Jr. and releasing to the said Guest all demands on him, or on the land so conveyed to him, on account of the said annuity. This deed was objected to.
Bayard. This deed was executed by Mrs. Stilley during coverture, and this is pleaded in the case next on the docket wherein Guest is the plff. in replevin. There are four cases all depending on the same state of facts. To the plea of coverture there is a replication of divorce and a demurrer.
Wales produced an exemplified copy of the act of assembly divorcing and separating Susanna Stilley, from the bed andboard of her husband, John Stilley, and enacting that she should, from thenceforth, "enjoy, have and receive all the rights, liberties; immunities and privileges of a free, single and unmarried woman," provided that it should not be lawful for her to carry again during the life time of the said John Stilley; and further enacting that it should be lawful for her "to hold and retain all such personal property as is now in her possession, and may ask, demand, sue for and recover and receive, in her own name and for her own separate use, all such yearly or other rents, annuities, debts or sums of money as may be now due her or shall hereafter grow and become due to her, and all other real and personal estate whatsoever to which the said Susanna now is, or hereafter may become entitled to in her own right," c. He relied that this act of assembly gave to Mrs. Stilley full power to execute the deed in question releasing her annuity.
R. H. Bayard, insisted that it gave no such power. It is but a partial divorce — a divorce a mensa et thoro. In so restraining it the legislature designed that it should be subject to all those restrictions to which such a limited divorce is liable. It is a mere separation of the parties and a restoration to the wife of those personal rights and immunities from the control of her husband, which would follow a divorce of a similar nature in the Ecclesiastical Courts of England; and additionally the granting to her certain personal property, and the right to recover certain rents or the proceeds of annuities as they should fall due for her separate use and maintenance and in lieu of alimony. This was necessary. The Ecclesiastical Court, on a decree of separation, would also decree alimony; our legislature, by law, enacts precisely such a separation, subject to all the incidents of such a divorce, but as there is no court to make the additional provision for alimony, the act proceeds to vest in her for her separate use the proceeds of certain annuities. Does this enable her to destroy such annuity? In the first place it gives her no power to execute a deed; and again she has no power over the annuity itself, but only over the proceeds. Suppose there are lands held by her husband in her right; the act gives her the rents, but does it give her the power to defeat his interest as tenant by the curtesy initiate? Can she convey these lands under the authority to collect rents?
The whole of this act must be taken together and so construed as to give the whole meaning. The words of the divorce are to be taken in their legal sense, a separation from bed and board, and the words which follow, that she "shall enjoy, have and receive all the rights, *Page 341 
liberties, immunities and privileges of a free, single and unmarried woman," refer only to her personal rights and immunities from her husband's control. It is evident they do not refer to any rights of property, otherwise the subsequent specific and particular grant of the right to receive certain species of property essential to her support would be useless and nugatory. We insist then that Mrs. Stilley had not the power to release this annuity, and that her joining in the deed to Guest as it was in point of fact, without consideration, is also in point of law, null and void, as the act of a feme covert.
J. A. Bayard, for plaintiff. The objection to the evidence is a technical one founded on the supposed restrictive force in the words "from bed and board." The question is whether the act so far removes the disability of coverture as to enable Mrs. Stilley to release an annuity granted to her in her own name, and due to her in her own right. The act is in its terms a divorce a mensa et thoro,
but it also grants to the wife certain rights and privileges which it it said would not follow a sentence of partial divorce in the Ecclesiastical Courts. It is not denied that the legislature has entire control of the subject; that their act is operative in whatever form and to whatever extent they choose to pass it. Call it, therefore, what you will, whatever rights, powers, exemptions or privileges they have granted to Mrs. Stilley, she possesses, whether they would follow a partial divorce in the Ecclesiastical Courts or not. The inquiry then is only what has the legislature granted? That she shall enjoy and have all the rights, liberties and immunities of a free, single and unmarried woman, with but one single exception, that of marrying again during Stilley's life. To all other purposes she is completely a divorced woman. Now if one of the rights of a free unmarried woman is to dispose of her own property, and to release debts due to her, the deft. in this case has that right, and this is the right she has exercised in making the deed now offered in evidence. And as if to put it beyond a cavil the act goes on to grant, in express terms, the right and power to sue for, collect and receive, in her own name and to her own use, all kinds of property, real or personal, to which she then was or might become entitled, particularly specifying annuities and rents. The right to sue includes the right to release.
The Court. This woman is divorced to all purposes, but that of marrying again during the lifetime of John Stilley. She had the power to release this annuity. Deed admitted.
The plff. then proved a release from Mrs. Stilley to the holders of two other parts of the land charged; and, after hearing the defts.' counsel, the COURT stopped Wales from replying for plff.
They stated to the jury that there was one point which settled the case. This suit arose out of a distress by Mrs. Stilley for twenty-nine years arrears of an annuity or rent charge bequeathed to her by her former husband, Thomas Cartmell, and charged upon lands devised to his four sons, William, Thomas, George and Joseph. The plff. in replevin has given in evidence a deed from Thomas Cartmell, jr. and Susanna Stilley (the deft.) to Henry Guest, for one fourth of the land charged with this annuity, to wit: the share of Thomas Cartmell, the younger, one of the devisees. This deed bears date *Page 342 
the 12th April, 1812; and, after reciting the rent charge of $40, on the whole tract it conveys the one-fourth part of that tract to Guest, and releases to him, generally, all rents issuing out of it, and particularly discharges and releases it from the one fourth part of this annuity. This release of a part operates in law as a release of the whole: and it will not he necessary for the jury to examine the question which has been principally considered in the argument, whether Mrs. Stilley has not, in point of fact, released the whole of this annuity, for it is a well established principle, that if rent be charged upon a tract of land and the grantee release any portion of the land charged, it is a release of the whole; (5 Bac. Ab'dg. 694.) and on this principle the deft. has released the whole of these lands, and the plff. in replevin must have a verdict.
Quere. Was this a rent charge such as could be distrained for under the act of assembly? (8 vol. 218.) If so, all annuities charged on land must be the subject of distress though no clause of distress be added to the grant. The court was not called on to decide this question, it was therefore not examined.